UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON

IN EX PARTE MATTER OF:

THOMAS PRINS,

CASE NO.

DECLARATION OF
ACTING AFOD WILFREDO BAEZ-
SANTIAGO

I, Wilfredo Baez-Santiago, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am an (Acting) Assistant Field Office Director ("AFOD") employed by the United States Department of Homeland Security ("DHS"), United States Immigration and Customs Enforcement ("ICE"), Office of Enforcement and Removal Operations ("ERO"). I am currently assigned to the ERO office at the Northwest ICE Processing Center, located in Tacoma, Washington. At NWIPC, I manage ERO personnel and provide oversight of ICE operations in the facility. I have been employed continuously by DHS since 2015.

2.      I am familiar with the case of Thomas Prins ("Respondent"). I make this declaration based upon my personal and professional knowledge, obtained from various records and systems maintained by ICE in the regular course of business. I provide this declaration based on the best of my knowledge, information, belief, and reasonable inquiry in the above-captioned case.

Declaration

3.      ICE is committed to ensuring that every person detained in its custody receives timely access to necessary and appropriate medical, dental, and mental health care and treatment while in custody. The health, safety, and welfare of all persons detained in its custody are among the agency's highest priorities, and ICE has protocols in place to ensure that any individual on a hunger strike within its detention facilities is promptly and appropriately addressed and treated, and that the safety, security, and order of the facility is maintained for the detainees, staff, contractors, volunteers, and visitors therein.

4.      Thomas Prins, Axxx-xxx-xxx, ("Prins") is a citizen and national of Canada. He is presently detained at the NWIPC under immigration laws. He has been detained at the NWIPC since November 19, 2023.

5.      ███████████████████████████████████████████████████

6.      On January 25, 2024, Kenneth VanDerhoff filed Form E-28, as the primary attorney on Prins' immigration court matters. ████████████████████████ On March 20, 2024, Dristin Kyrka filed a Form E-28, replacing Mr. VanDerhoff ████████████████

7.      On March 29, 2024, Prins missed his ninth consecutive meals and was officially listed as being on a hunger strike by ICE Health Service Corps ("IHSC") personnel. He was not consuming solid food, but was drinking fluids. He was admitted to the Medical Housing United ("MHU") at that time for close medical monitoring.

Declaration

8.    As of breakfast, April 26, 2024, Prins has missed 92 meals.  IHSC medical professionals are checking on Prins multiple times a day during his hunger strike.  Unfortunately, Prins nearly always refuses to allow the requested medical assessments meant to ensure his continued safety.

9.    IHSC has notified ERO that a court order is necessary to obtain medical assessments to prevent irreversible injury.  On April 26, 2024, Prins' ██████████ Ms. Kyrka, was notified via email of ERO's intent to obtain a court order.

10.    Since Prins began his hunger strike at NWIPC, staff have attempted to convince him to end the hunger strike and begin eating food.  It has been explained to Prins that if he continues the hunger strike, his health will be seriously jeopardized and he may eventually die.  Despite repeated efforts to get him to eat adequately, he has failed to cooperate.

11.    At NWIPC, the personnel have informed Prins that if he continues his hunger strike, it may become necessary to seek a court order to involuntarily examine him, test him, and administer food or hydration to save his life.

12.    In addition to ICE's paramount concerns about the health and wellbeing of ICE detainees, the death or injury of any detainee as a result of a hunger strike would also seriously affect the operations of ICE at the NWIPC and adversely affect ICE efforts to maintain the safety, security and good order of the detention facility for the detainees, staff, contractors, volunteers, and visitors therein in the following ways:

   a. My foremost obligation is to maintain the safety and security of the ICE detainees housed at the facility and provide for the health and well-being of the detainees, which includes protection from self-harm.  A facility cannot stand by and fail to

Declaration

intervene in self-injurious behavior that is completely antithetical to our mission of maintaining the health and safety of noncitizens under our care.

b.  Moreover, other detainees may engage in hunger strikes, whether or not with the intention of committing suicide by starving themselves to death.  For a detainee to cause his own death without staff intervention would completely undermine DHS's obligation to render appropriate medical care and prevent detainee suicides.

c.  In addition to critical personal health and safety for each individual, general security and order in the facility can also be destabilized by hunger strikes, which risks harm to other persons in the facility, including detainees, staff, contractors, volunteers, and visitors.  Perceptions may be formed by the ICE detained population that ICE will simply let a detainee die, without intervening to save him or her, which could lead to lowered morale, resentment, acts of detainee violence and disruptions.  The detained population, having formed such a perception, could act alone or in groups to disrupt the operation of the facility.  I am concerned that hunger strikes, and even other acts of a disruptive or violent nature, would be directed at staff and other providers, to express detainee anger, resentment, and frustration.

d.  If such disruptive acts were to occur, tensions between detainees and staff would be heightened, making almost all aspects of the detention operation more difficult for staff to perform.

e.  Other detainees may decide that they have lost confidence in the skills, ability, or willingness of medical staff at the facility to administer medical care.  They may be

Declaration

reluctant to seek treatment from the medical staff, reluctant to accept the treatments recommended, and may decide there is a need to "second guess" the judgments of the medical staff. They may simply refrain from seeking treatment for their illnesses from the medical staff, leading to emergency situations that could have been avoided had the detainee sought medical help at an earlier time.

f.  Detainees who participate in hunger strikes may severely and permanently damage their health. This may also require immediate and long-term medical care which in turn may require DHS to unnecessarily divert and expend its limited resources when such action can be avoided with appropriate medical intervention.

g.  In the absence of an adequate response to life-threatening hunger strikes, other detainees may participate in such activities in an attempt to change facility operations or exact concessions from facility management, rather than using other available means that do not threaten their health and wellbeing. For example, Detainees may initiate hunger strikes to pressure staff to transfer them away from the facility, or to gain their release from detention. Without the ability to intervene when medically necessary, the facility will be forced to choose between letting the detainee die and giving in to their demands. ICE supports detainees' ability to express concerns about their cases, and an array of options – short of life-threatening hunger strikes – is available to them, including:

i.  Pursuit of applications for relief and protection from removal in proceedings before a neutral immigration judge;

Declaration

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

    ii.   Submission of facility-specific informal and formal grievances (including emergency grievance processes and appeal processes) relating to any aspect of their detention, including medical care, which trigger prompt responses;

    iii.   Submission of the online ERO Contact Form on the detainees' behalf by stakeholders, including interested individuals, nongovernmental organizations, faith-based organizations, and advocacy groups;[1]

    iv.   Complaints to oversight entities within the Department of Homeland Security, including the Office of Inspector General, Office for Civil Rights and Civil Liberties, Office of Detention Ombudsman, as well as the ICE Office of Professional Responsibility; and

    v.   Use of the Detention Reporting and Information Line, a toll-free service that provides a direct channel for detainees, family members, private attorneys, and other stakeholders to communicate directly with ICE ERO about detainee allegations and concerns.

h.  Some detainees may merely voice threats to go on a hunger strike, diverting additional staff attention away from other detainees.

i.  If a detainee is permitted to die from self-starvation, public perception of DHS and its staff will be adversely affected. Members of the community expect that DHS

---

[1] This form is available at: https://www.ice.gov/webform/ero-contact-form.

Declaration

will use its best efforts to preserve the lives of detainees while enforcing the immigration laws of the United States.

For the reasons stated above, to allow Prins to refuse medical assessments and laboratory testing would harm ICE's ability to protect detainees from self-harm and suicide, and operate the NWIPC in a safe, secure and orderly manner. It is necessary to administer medical assessments and laboratory testing to prevent imminent bodily harm and/or death.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Tacoma, Washington, on April 26, 2024.

_____    04-26-2024
Wilfredo Baez-Santiago
(Acting) Assistant Field Office Director
United States Department of Homeland Security
United States Immigration and Customs Enforcement

Declaration

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800